Council in Wu against Good Samaritan Hospital should proceed. Let's hear from Council for Wu. Good afternoon, Your Honors. May it please the Court, my name is Deborah Messir, and I represent the appellant in this matter, Dr. Serena Wu. We thank the Court for holding this argument during this trying time for our country, and I apologize in advance if inadvertently speak out of turn due to the teleconference. Your Honors, this case is fundamentally about the defendant Good Samaritan Hospital's desire to get around the employment law, to unlawfully reduce the pay and position of my client, Dr. Serena Wu, by bringing in a contractor, Madonna Perinatal, to replace her, and then wanted to continue working in her position with her patients at the hospital. This appeal focuses on the narrow issue of whether the District Court failed to utilize the proper standard review at the motion to dismiss stage in proceedings. We respectfully submit that the Court should reverse and remand for three reasons. First, Your Honors, the District Court's factual allegations set forth in the complaint as true under the ordinarily understood standard of 12b6 motions in this Court. The Court failed to draw all reasonable inferences in favor of Dr. Wu, who was the non-moving party, in dismissing her Title VII discrimination claims for untimeliness. There was evidence in the complaint and record that the EEOC accepted the filing of charges by a facsimile as timely. There was evidence in the record of the facsimile sheet itself showing the successful transmission. And, Your Honors, there was evidence in the record of timely mailing of the submission on the same date that the fact was sent. Despite this, the Court ignored that evidence, did not ask the EEOC District Office to come in and give the agency's position, and drew improperly all inferences against Dr. Wu in concluding that the EEOC submission was untimely. We respectfully ask the Court to consider a case out of the Third Circuit, Your Honors, the Louini case in 2009, a similar set of facts in which also involved the EEOC. Here, the Court concluded that the District Court had erred in dismissing the claim because there was a genuine issue of material facts. That was, in fact, a case at the summary judgment stage. The Court had erred because it had not brought in the local agency and taken evidence on the we are at a very preliminary motion-to-dismiss stage. At a minimum, the agency, as the gatekeeper of Title VII, the specialized agency, should have been given an opportunity to weigh in as to whether the complaint was timely filed. Second, Your Honors, the District Court failed to consider the other employment claims through this Court's required precedent of Littlejohn, through the lens of Littlejohn. Littlejohn requires, simply put, a very basic liberal pleading that the plaintiff is a member of the protected class, qualified, suffered an adverse employment action, and pleads minimal support that the employer was motivated by discriminatory intent. In the nine pages of in our complaint, Your Honors, there is ample support. There is ample support to make an initial prima facie showing at trial under McDonnell Douglas, much less at this very preliminary motion-to-dismiss stage. Third, Your Honors, with respect to the other causes of action dismissed by the Court, we respectfully submit that the Court did not take note of Iqbal, which, as Your Honors know quite well, requires if the complaint pleads substantial factual content that the claim may proceed. And here, in fact, again, Dr. Wu pled substantial content. With respect to the Equal Pay Act and discrimination in wages under New York State law, Dr. Wu pled that she was forced to work for the contractor for less wages. It also came to counsel's attention later on in these proceedings that the hospital had, in fact, interviewed and made an offer to a white male doctor for the same amount of pay as Dr. Wu, who had substantially less experience. She also pled that the male and female employees would be performing the same type of work and under similar working conditions. With respect to the other claims, Your Honors, Dr. Wu similarly made substantial content pleading more than sufficient enough to satisfy the requirements of Iqbal. Your Honors, because there are sound policy reasons to, number one, allow the EEOC to weigh in on whether or not a complaint has been timely filed, number two, to allow the Court to move employment claims forward in the Second Circuit under the liberal pleading standards of Littlejohn. And because Iqbal requires the Court to allow a claim to proceed when content is substantially pled, Your Honors, we simply ask that Dr. Wu be given her day in court and that her claim not be prematurely dismissed. Accordingly, the Court reverse and remand the District Court's decision for further proceedings. Thank you, Your Honors. Thank you very much. I turn now to Judge Kears to ask whether she has any questions. No questions here. Thank you. Judge Walker. No, I have no questions. Well, excuse me, I do. I do have one question, and that is, why isn't the operative time for the triggering event for the 300-day statute of limitations before filing has to be made with the EEOC? The date she was given notice of termination, which was May 16th of 2015. Yes, Your Honor. We believe that the operative date should be August 18th of 2015, which was the date she received a letter from the General Counsel, Ms. Hatchnose, of the Good Samaritan Hospital. We believe that this is a continuing violation type case. On that date, the Good Samaritan General Counsel offered to Dr. Wu that she would be able to stay on in her position for another month throughout her three-year contract in exchange for waiving all claims of discrimination. She made that offer on the 18th, giving Dr. Wu some time to respond. In addition, there were numerous calls on the 18th, the 19th, the 20th, and the 21st between Ms. Hatchnose and counsel for Dr. Wu, going back and forth on the terms of that one-month extension. So we believe, Your Honor, that this was part of the pattern of discrimination, hostile workplace harassment that Dr. Wu was facing, and therefore that the operative date should be the August 18th. And in addition, respectfully, the EEOC appears to have agreed with that because they accepted this submission as timely. Counsel had been in contact with the EEOC District Office quite a bit before the filing of this complaint and attempted to respond to all their questions in the initial complaint to the EEOC, and also filed it pursuant to their instructions by fax. This is a matter of jurisdiction, and why, as a matter of jurisdiction, can it be modified by the EEOC? Our jurisdiction is based upon the timely filing before the EEOC, which is a matter of inflexible jurisdiction, it seems to me. It's not a matter of something that can be modified by the EEOC. Your Honor, I don't... I'm sorry, Your Honor. Go ahead. Your Honor, respectfully, I don't believe that the EEOC is modifying the timeliness issue here. The EEOC is the specialized agency, you know, empowered to deal with these Title VII claims, which are about a third of our overall complaints before the Court. Let me put it another way, if I could. Because we are guided, or our jurisdiction is determined by the 300-day period before the EEOC, can the EEOC obliterate the operation of the statute of limitations? With respect to this case, I don't think it's an issue because I believe the timing was timely, the filing was timely. If it's a policy question... It wasn't timely if we agree, if we think that the actual date, the date the claim accrued was the date she received notice of termination, which was May. May 16th. Yes, Your Honor. Again, we believe that the operative date is the August 18th, and we think that it's premature to dismiss this at this point. It's a question of jurisdiction. I mean, we have to decide that. Thank you very much. I got your point. Thank you, Your Honor. Thank you very much. We'll hear from the opposing counselor. Good afternoon, Your Honors, and may it please the Court. My name is Christopher J. Morrow, and I represent defendants of Pelley's Good Samaritan Hospital Medical Center, Catholic Health Services of Long Island, and Benjamin Schwartz MD, collectively referred to as the Hospital Pelley's. At the outset, I think it's important to note that by failing to object to certain portions of the report and recommendation by the magistrate, in this case, Dr. Ruiz waived appellate review of the dismissal of many of the claims in her complaint, specifically her hostile work environment claims, failure to hire claims, fraud, breach of contract, and intentional infliction of emotional distress claims have all been conclusively waived at this point, and the reasons for that waiver are clearly set forth in our brief at pages 11 through 13. But I next want to turn to this issue of when Dr. Ruiz filed her charge of discrimination, and I want to emphasize at the outset that it's not even necessary for this Court to address this issue in order to resolve this case in our favor. But nonetheless, we believe that the EEOC's regulations clearly and dispositively address the issue of when Dr. Ruiz filed her EEOC charge, and that date is June 16th of 2016. The EEOC regulations on this point are very clear. The regulations require that the EEOC date and timestamp all charges of discrimination quote, upon receipt, quote, close quote, and that all charges are being filed for purposes of the 300-day statute of limitations period, which is jurisdictional, and they are received by the EEOC on that date. So we think there is no gray area there. The EEOC regulations necessarily lead to the conclusion that the date stamp sets the date of filing, and here the date stamp reads June 16th of 2016. Dr. Wu, in opposition to that, argues that she, in fact, faxed her charge two days earlier to the EEOC on June 14th of 2016, but that has no legal relevance under the regulation. It simply doesn't matter when Dr. Wu faxed her charge to the EEOC. If the EEOC received her charge on June 14th of 2016, that's the date that would have appeared on the date stamp per the EEOC's own regulation, but the EEOC didn't receive the charge on June 14th. It received it two days later on June 16th, and therefore all of Dr. Wu's Title VII claims are untimely because based on that June 16th, 2016 filing date, the entirety of Dr. Wu's employment with the hospital falls outside of the 300-day filing period, but again, to emphasize, it is not necessary for this court to even address that issue in order to find it our favor because even if one was to assume that Dr. Wu filed her charge on June 14th, 2016, which is the date that she argues for, all of her Title VII claims would still be untimely. The result simply doesn't change, and Dr. Wu does not even address that argument, much less rebut it. If you were to count back 300 days from June 14th, 2016, that gets you to August 19th of 2015, which according to Dr. Wu's own complaint allegations was her last day of employment at the hospital, so even if June 14th is the filing date, only one day, the last day of Dr. Wu's employment with the hospital would fall within the 300-day statute of limitations period, and crucially, Dr. Wu does not allege a single act of discrimination occurred on August 15th of 2015, and now for the first time, it appears that Dr. Wu is arguing that August 18th of 2015 is the operative date, which again would be the 301st day, so that still would be outside of the statute of limitations period, and in addressing the Title VII claims based off of the termination of Dr. Wu's employment, the court is correct that it is black letter law that Title VII claims based off of termination of employment accrue on the date that the employee receives a notice of excision. The last day of employment is not in and of itself an actionable thing under Title VII. The date that she received notice was May 15th of 2015, so that is the date of accrual for purposes of her Title VII claims that stem from the termination of her employment. Excuse me. You have one more minute. Thank you. I'd like to next turn to Dr. Wu's argument that she pled a plausible discrimination claim under this court's decision in Littlejohn. Dr. Wu almost entirely wrecked this argument on the fact that she alleges that she was replaced by someone outside of her protected class, which isn't a complaint. However, what distinguishes this case from Littlejohn is the fact that Dr. Wu also alleges that the entire maternal fetal medicine practice of the hospital was outsourced to Madonna, a separate and distinct corporate entity. So the fact that Dr. Wu alleges that it wasn't the hospital that replaced her creates a fundamental causation issue in her discrimination case. And because of that, she can't even meet the minimal standard of pleading a plausible discrimination case under Littlejohn. And I'd next like to address the substance of Dr. Wu's Title VII in New York State human rightful retaliation claims. Simply put, Dr. Wu has failed to plead valid retaliation claims for the simple reason that her complaint failed to satisfy the required but for causation standard. There are no statements in the alleged complaint which could lead anyone to, which could indicate the hospital harbor retaliatory animus. And even taking Dr. Wu's own allegations as true, there was an eight month gap between her alleged protected activity and the hospital's decision to terminate her appointment. And for those reasons, Dr. Wu's retaliation claims were properly dismissed. And I see that I'm now out of time. Thank you, Your Honor. Thanks very much. Has plaintiff's counsel reserved any time? Yes, I have, Your Honor. Please proceed. Yes, Your Honor. Just to turn quickly to opposing counsel's argument. First, with respect to the liability of the hospital for the contractor, Madonna Perinatal Action. It's well established that there can be joint liability if, when there is a third party contractor relationship. Excuse me. I'm sorry, Judge. There is another counsel to argue on behalf of the appellee. I apologize for the interruption. I'm not sure if you noticed that Adam Francois-Watkins. The Madonna defendants. The Madonna defendants. Yeah, fine. Well, let's hear first from the Madonna defendants. Thank you. I'm sorry. I didn't know whether to interject there. This is Adam Francois-Watkins for dependent appellee, Madonna Perinatal Action. And Jonathan Goldstein, may it please the court, wants to keep it very short. Unless the court has specific questions, the Madonna defendants will rest on their briefs. That's fine. Judge Kears, do you have any questions for the Madonna's counsel? I do not. Thank you. Judge Walker? No. Okay, then we'll have plaintiff's counsel proceed with reply. Thank you, Your Honor. Your Honor, I would like to address the contentions of opposing counsel. First, with respect to the liability of Good Samaritan Hospital. Good Samaritan Hospital had contracted with Madonna in an effort to force out Dr. Wu and get her to work for them for less pay. The facts clearly show that. When there is a contractor, there is ample evidence to support treating them as one employer when they were the contractor hired to run the maternal fetal unit at Good Samaritan. Secondly, with respect to the continuing violation issue that they raised. The letter was on August 18th of 2015, Your Honors, and I apologize if I misspoke. The last date of employment was August 19th. The acts of discrimination continue necessarily through August 19th, because Dr. Wu was forced out early from her contract. And she was she continued to be subject to a climate of harassment and racial discrimination. And Your Honor, Your Honor, they have not been able to explain why a white male doctor was interviewed and hired, and why an outside contractor was brought in, all the while they were assuring Dr. Wu that her employment was simply awful. She was given a few months notice to uproot her entire family and seek new employment in a highly specialized field. There are simply not that many maternal fetal medicine positions around even in a large metropolitan area like New York. Dr. Wu was forced to quickly look for employment, and ultimately found employment in Lancaster, Pennsylvania. Had she known earlier that they would not renew her contract, she would have had time to find a suitable position. So she was put in an awful position, she was treated most unfairly, and Dr. Wu simply wants her day in court to litigate these claims of which Title VII is only a third. There are numerous other claims that were dismissed by the district court, we believe, not in accordance with Iqbal or Littlejohn. Thank you, Your Honor. Thank you very much. Let me ask if on the basis of this argument, Judge Kearse has any questions? No questions here. Judge Walker? I have no questions, under submission, and we will recess briefly. This panel will confer briefly, and then we will return with a slightly different panel.